O

# United States District Court
# Central District of California

| | |
|---|---|
| GUADALUPE MORALES,<br><br>   Plaintiff,<br><br>   v.<br><br>ALLSTATE NORTHBROOK INDEMNITY COMPANY, et al.,<br><br>   Defendants. | Case № 5:20-cv-02577-ODW (SHKx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]** |

## I.   INTRODUCTION

Plaintiff Guadalupe Morales initiated this bad faith action against her insurer, Defendant Allstate Northbrook Indemnity Company, after Allstate delayed paying Morales's underinsured motorist claim. Allstate moves for summary judgment on Morales's sole cause of action for breach of the implied covenant of good faith and fair dealing, or alternatively for partial summary judgment on Morales's request for punitive damages. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 22.) Allstate contends that a "genuine dispute" regarding the value of Morales's insurance claim bars a finding of insurer bad faith and no evidence supports punitive damages. (*Id.* at 7.) For the reasons discussed below, the Court **GRANTS** Allstate's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Allstate issued Morales an automobile insurance policy (the "Policy") that included policy limits of $100,000 for underinsured motorist ("UIM") coverage. (Allstate Statement of Undisputed Facts ("SUF") 1, ECF No. 22-2.) The Policy provided that, in the event Morales and Allstate disagreed on Morales's entitlement to damages or on the amount of damages, either party could submit a written request for arbitration and the disagreement would be settled by a neutral arbitrator. (*Id.*)

On July 12, 2017, while covered under the Policy, Morales was involved in a car accident in which she was not at fault. (SUF 2; Decl. Matt Long ("Long Decl.") ¶ 8.i, ECF No. 22-4.) Morales's airbag deployed and struck her in the face, and she suffered injuries to her neck, back, and abdomen. (Morales Statement of Genuine Issues ("SGI")[2] & Additional Material Facts ("AMF")[3] 17, 19, ECF No. 23-1.)

On December 8, 2017, Morales notified Allstate that the insurance company for the at-fault driver had tendered its policy limit of $15,000, and she asked Allstate to refer the "matter to counsel for Underinsured Motorist proceedings." (AMF 23.) On January 10, 2018, Allstate informed Morales it had opened a UIM claim, would begin reviewing the claim, and, per the Policy, would initiate arbitration if the parties were unable to reach an agreement. (*See* AMF 24–25; Long Decl. ¶ 3, Ex. 3 ("Corresp.") 300, ECF No. 22-7.)

In April and May 2018, Morales sought medical care from an otolaryngologist (an ear-nose-throat doctor, or "ENT") for ringing in the ears ("tinnitus") and a loss of taste and smell ("hyposmia"). (AMF 22, 26; *see* Long Decl. Ex. 16 ("Goufman Records"), ECF No. 22-7.) Morales's ENT, Dr. Goufman, opined that these conditions were possibly permanent. (AMF 26.) On July 27, 2018, Morales sent Allstate a demand letter, informing Allstate that as a consequence of the accident she

---

[2] Morales does not dispute any of Allstate's asserted facts in its SUF. (*See* SGI 1–15.)

[3] Allstate objects to certain of Morales's assertions in the AMF and the evidence cited therein. To the extent the Court relies on any such assertions or evidence, the Court has considered Allstate's objections and has overruled them. *See infra* Section IV.

suffered from permanent persistent tinnitus and near total hyposmia. (SUF 3.) Morales demanded Allstate pay the $85,000 policy limit or submit the matter to arbitration by August 27, 2018. (SUF 3.)

Allstate reviewed the demand letter and Morales's claim, and determined that, in light of Morales's claims for permanent sensory loss, it needed to further investigate to complete its evaluation. (SUF 4; Long Decl. ¶¶ 8.gg, hh.) Allstate notified Morales's counsel that Allstate could not accept or reject the demand at that time and requested a medical records release authorization and an extension of time to investigate. (SUF 4–5; Long Decl. ¶¶ 8.hh, mm, pp.) Morales's counsel refused the extension and responded that Allstate had all the records it needed. (Long Decl. ¶ 8.pp.) Allstate did not receive a medical records release from Morales. (SUF 5.)

By September 2018, the parties were proceeding with the UIM arbitration. (SUF 6.) In November 2018, in connection with this arbitration, Allstate served subpoenas on Morales's medical providers to obtain her medical records. (AMF 30.) In January 2019, Allstate deposed Morales. (SUF 7.) By March 2019, Allstate had retained an orthopedic medical expert, Dr. Kaplan, and an ENT medical expert, Dr. Djalilian, to provide opinions on Morales's orthopedic and otolaryngological injuries, respectively. (*See* SUF 8–11; Long Decl. ¶ 16.) In April 2019, the parties began negotiating an arbitration date, and, on August 12, 2019, they mutually agreed to arbitrate on February 21, 2020. (AMF 45, 49; *see* Corresp. 388–92.)

By April 2019, Allstate's orthopedist, Dr. Kaplan, had examined Morales and reported "findings consistent with mild tendinitis, left shoulder, and status post left knee contusion" as well as "whiplash injury," but no "significant abnormalities." (SUF 8.) Also by April 2019, Allstate's ENT, Dr. Djalilian, had reviewed Morales's medical records and other relevant documents and prepared a Medical Record Review ("MRR"), in which he opined that "there [wa]s no evidence that the incident in question caused hyposmia" and suggested that Morales was possibly "exaggerating" her tinnitus. (SUF 9; AMF 36.) At the time Dr. Djalilian prepared his MRR, he did

not have the records of Dr. Goufman, Morales's ENT. (AMF 37.) In June 2019, Dr. Djalilian also performed an independent medical examination ("IME") and opined in his IME report that Morales "did not have a permanent loss of smell, loss of taste, or tinnitus as a result of the accident." (SUF 11; AMF 50–52.)

By late July 2019, Allstate had received all the medical expert reports—Dr. Kaplan's orthopedic reports and Dr. Djalilian's MRR and IME reports. (SUF 12; AMF 41, 53; Long Decl. ¶¶ 17, 19–20, 23.) By January 2020, Allstate completed its evaluation and valued Morales's UIM claim at $29,361. (SUF 12; AMF 55–56; Long Decl. ¶ 26, Ex. 2 ("Claim File") at 220–23 (entry 1/9/2020 at 4:50 p.m.), ECF No. 22-7.) After offsetting the $15,000 paid by the at-fault driver's insurer, Allstate offered Morales $14,361. (SUF 12; Long Decl. ¶¶ 26–28.) Morales did not accept this offer. (SUF 12.)

Accordingly, arbitration proceeded as scheduled in February 2020. (SUF 13.) In March 2020, with mixed findings regarding Morales's injuries, the arbitrator awarded Morales the policy limits of $85,000. (SUF 14; Long Decl. Ex. 12, ECF No. 22-7.) Allstate promptly paid the award in full. (SUF 15.)

In June 2020, Morales initiated this bad faith action against Allstate. (*See* Compl., ECF No. 1-1.) Allstate now moves for summary judgment. The Motion is fully briefed. (Opp'n, ECF No. 23; Reply, ECF No. 24.)

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the

outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250).

A genuine issue requires evidence, not speculation or guesswork. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Testimony that is conclusory, speculative, or "uncorroborated and self-serving" is insufficient to raise genuine issues of fact and defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Although the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

## IV.   EVIDENTIARY OBJECTIONS

Allstate objects to certain items of Morales's evidence. (*See* Obj. Pl. Evid., ECF No. 24-2.) Specifically, Allstate objects—on numerous grounds—to the expert report of Hugh Black, Morales's claims-handling expert ("Black Report"), and the deposition testimony of Dr. Marc Kayem, Morales's ENT expert ("Kayem Deposition" or "Kayem Dep."). (*See id.* at 2–28; Decl. Arik Shafir ("Shafir Decl."), Exs. 25, 26, ECF Nos. 23-2, 23-3.) Allstate also objects to some of Morales's AMFs and associated evidence on hearsay and relevance grounds. (Obj. Pl. Evid. 1–2.)

1       The Court **SUSTAINS** Allstate's objection to the Black Report because Black offers improper and conclusory opinions on ultimate issues. Moreover, to the extent Dr. Kayem offers improper opinions on ultimate issues, the Court **SUSTAINS** Allstate's objection to the Kayem Deposition.

      Otherwise, the Court finds it "unnecessary and impractical . . . to methodically scrutinize each objection and give a full analysis of each argument raised." *See Doe v. Starbucks, Inc.*, No. SACV 08-0582-AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). The Court **OVERRULES** Allstate's objections based on hearsay because Morales could present the contents of the objected-to evidence "in an admissible form at trial." *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 2022 WL 80429, at *14 (S.D. Cal. Jan. 7, 2022); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (reminding courts that the focus at the summary judgment stage is on the admissibility of the evidence's contents, not its form). Additionally, the Court **OVERRULES** Allstate's objections based on relevance as duplicative of the summary judgment standard itself. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Finally, to the extent Allstate objects to evidence that is unnecessary to the resolution of the Motion, the Court need not consider those objections. *See id.* at 1122 (proceeding with only necessary rulings on evidentiary objections).

## V.     DISCUSSION

"[T]o establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990)). An insurer has proper cause for withholding benefits when there is a genuine dispute as to the amount of the insured's coverage claim, and in such cases the insurer "is not liable in bad faith," even where it is ultimately found to be liable for coverage of the claim. *Chateau*

*Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001), *as modified on denial of reh'g* (July 30, 2001).

A genuine dispute over the value of a claim exists when reasonable minds could differ. *See id.* at 350; *see also Ives v. Allstate Ins. Co.*, 520 F. Supp. 3d 1248, 1255 (C.D. Cal. 2021) (noting that an objective standard applies to whether a genuine dispute is reasonable). An insurer may establish "a genuine dispute by showing that it relied on opinions from experts while evaluating the insured's claim." *Myers v. Allstate Indem. Co.*, 109 F. Supp. 3d 1331, 1336 (C.D. Cal. 2015) (internal quotation marks omitted) (citing *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000)). However, where a bad faith claim is based on an insurer's biased or inadequate coverage investigation, the existence of a dispute over the coverage claim does not necessarily insulate an insurer from bad faith liability. *Guebara*, 237 F.3d at 996 (holding that the genuine dispute rule "should be applied on a case-by-case basis").

Although "the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact," *Chateau Chamberay*, 90 Cal. App. 4th at 346, the question becomes one of law and permits summary judgment "when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable," *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002). In such a case, "there are no conflicting inferences, [so] reasonable minds could not differ." *Chateau Chamberay*, 90 Cal. App. 4th at 350.

Allstate contends it is entitled to summary judgment on Morales's bad faith cause of action because there was a genuine dispute regarding the value of Morales's UIM claim during Allstate's claim evaluation. (Mot. 7–8.) Morales argues that Allstate's investigation was not thorough or fair, such that any dispute regarding the value of her UIM claim does not insulate Allstate from liability for bad faith. (Opp'n 3.)

### A. Genuine Dispute

Allstate establishes that there was a genuine dispute over the value of Morales's UIM claim. For instance, Morales did not seek treatment for hyposmia and tinnitus until April and May 2018, nine months after the accident. This type of delay in seeking medical care supports a finding that the claim or its value was in genuine dispute. *See Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d 843, 854 (C.D. Cal. 2021) (finding genuine dispute where plaintiff waited thirty-seven days after accident before seeking medical care).

Additionally, although Morales's ENT, Dr. Goufman, opined the hyposmia and tinnitus were "likely permanent," (Corresp. 329), Allstate's expert, Dr. Djalilian, opined that Morales's sensory conditions were not caused by the accident, not permanent, and possibly exaggerated, (SUF 9, 11; AMF 36, 52). Further, the undisputed evidence demonstrates that Allstate's claims adjuster reviewed and relied on all information provided to date in evaluating the claim, including the medical records and medical expert opinions. (*See* SUF 12; Long Decl. ¶¶ 26–28.) Because the extent and nature of Morales's sensory conditions were in dispute, Allstate's reliance on its own expert's opinion was reasonable. *See Ives*, 520 F. Supp. 3d at 1256 (finding insurer's reliance on its own expert reasonable where the extent and nature of plaintiff's injuries were disputed).

Allstate has established a legitimate dispute over the value of Morales UIM claim, meaning its delay in payment was justified. *See, e.g.*, *Chateau Chamberay*, 90 Cal. App. 4th at 348–49; *Fraley*, 81 Cal. App. 4th at 1293. Therefore, Allstate is entitled to summary judgment unless Morales raises a triable issue that permits conflicting inferences as to the reasonableness of Allstate's investigation. *See Chateau Chamberay*, 90 Cal. App. 4th at 350.

**B.      Thorough & Fair Investigation**

Morales argues that summary judgment is not appropriate because triable issues of fact exist about (1) the adequacy of Allstate's investigation; (2) the timeliness of Allstate's claim evaluation; and (3) the independence of Dr. Djalilian. (Opp'n 14–21.)

*1.      Inadequate Investigation*

Morales argues Allstate's investigation was inadequate because Allstate's ENT, Dr. Djalilian, did not have or review the records of her ENT, Dr. Goufman, when Dr. Djalilian prepared his reports. (Opp'n 15.) A dispute of fact does exist regarding exactly when Dr. Djalilian received and reviewed Dr. Goufman's records, (*see* AMF 37, 51), but this dispute is immaterial because the parties do not dispute that Dr. Djalilian reviewed those records prior to arbitration and testified that they did not alter his opinions, (AMF 58, 59; Shafir Decl. Ex. 22 ("Djalilian Dep.") 28:7–17, ECF No. 23-3; Decl. Hamid R. Djalilian ("Djalilian Decl.") ¶¶ 8–9, ECF No. 22-3). Further, the undisputed evidence demonstrates that Dr. Djalilian conducted a thorough IME that was objectively more extensive than Dr. Goufman's. (*See* SUF 11; *compare* Goufman Records, *with* Long Decl. Ex. 7 ("Djalilian Reports"), ECF No. 22-7.) These undisputed facts do not support a finding that Allstate's investigation was inadequate.

Morales also argues Allstate's investigation was inadequate because Dr. Djalilian never opined on Dr. Goufman's diagnosis and treatment, (Opp'n 16), but Dr. Djalilian was retained to evaluate Morales's condition, not Dr. Goufman's diagnosis. Regardless, it is undisputed that Allstate's adjuster possessed Dr. Goufman's and Dr. Djalilian's records and considered them both when evaluating Morales's UIM claim. (SUF 12; Long Decl. ¶ 26.) Allstate was entitled to rely on Dr. Djalilian's report over Dr. Goufman's "without incurring bad faith liability." *See Ives*, 520 F. Supp. 3d at 1256 (citing *Guebara*, 237 F.3d at 993). Contrary to Morales's argument, Allstate's reliance on Dr. Djalilian's opinion does not support an inference that Allstate ignored evidence supporting her claim. *See Shamiryan v. Allstate*

*Northbrook Indem. Co.*, 550 F. Supp. 3d 838, 842 (C.D. Cal. 2021) (stating that inferences require a factual predicate and may not be "drawn out of thin air").

Morales fails to raise a triable issue regarding the adequacy of Allstate's investigation.[4]

### 2. *Unreasonable Delay*

Next, Morales argues Allstate demonstrated a "pattern of unreasonable delay." (Opp'n 18.) "Before an insurer can be found to have acted [in bad faith], for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause*." *Chateau Chamberay*, 90 Cal. App. 4th at 346–47. Morales identifies three facts that she asserts raise a triable inference that Allstate unreasonably delayed paying on her UIM claim.

First, Morales argues Allstate "ignored her request" in December 2017 to refer the matter for UIM proceedings. (Opp'n 18.) However, the record does not support this assertion. Indeed, Morales does not dispute that when Allstate received Morales's correspondence, Allstate opened a UIM claim, assigned a UIM adjuster, and sent Morales a letter acknowledging the request. (AMF 23–25.) Allstate wrote it would begin reviewing the claim and start arbitration proceedings if the parties could not reach an agreement as to the amount of damages. (Corresp. 300.) Thus, Allstate responded to Morales's request with its actions and next steps towards resolving the claim.

Second, Morales points to the four months, from April to August 2019, for the parties to identify a mutually agreeable arbitration date. (*See* AMF 45–49; Opp'n 19.) However, Morales does not dispute that the parties *mutually agreed* to the

---

[4] The conclusory opinion of Morales's claims-handling expert, Hugh Black, also does not raise a triable issue. Black improperly opines on the ultimate legal issue, concluding that Allstate "failed to conduct a full, fair and thorough investigation." (*See* Black Report 3–4.) Accordingly, the Court sustains Allstate's objection to Black's Report. *See Chateau Chamberay*, 90 Cal. App. 4th at 350 (disregarding the conclusory declaration of insured's expert on "the ultimate question . . . to be decided by the court, not a jury"); *Sekera v. Allstate Ins. Co.*, No. EDCV 14-1162-JGB (DTBx), 2017 WL 6550425, at *13 (C.D. Cal. Sept. 19, 2017) (citing *Chateau Chamberay* and disregarding proffered expert report "rife with legal conclusions").

February 2020 arbitration date, or that the delay in scheduling resulted from conflicting availability of the arbitrator, counsel, and experts. (*See* AMF 49; Corresp. 387–92.) These undisputed facts do not raise an inference of unreasonable delay. *See Myers*, 109 F. Supp. 3d at 1333, 1337 (finding no dilatory conduct where insurer referred UIM claim to counsel in April and the parties agreed in August to arbitrate in December).

Third, Morales argues that discovery concerning the UIM claim was complete on June 7, 2019, when Dr. Djalilian examined Morales, and that Allstate "failed to evaluate the claim for over six months (until January 9, 2020)." (Opp'n 19.) This argument is also unavailing. Although Dr. Djalilian examined Morales on June 7, 2019, Allstate did not receive his IME report until July 22, 2019. (AMF 53; Claim File 182.) Further, Morales does not dispute that Allstate at least began to evaluate her claim when it received the IME report. (AMF 53 ("On July 22, 2019, [Allstate's adjuster] received and reviewed Dr. Djalilian's [IME] report.").) Allstate contends claim evaluation is an ongoing process, and Morales offers nothing about Allstate's action or inaction, beyond the timeline itself, to suggest that Allstate's delay was unreasonable. (*Cf.* Long Decl. ¶¶ 16–26 (describing records and reports the claims adjuster evaluated between March 2019 and January 2020, by which time he had "evaluated the claim" and obtained approval to make an offer).) The Court cannot conclude that six months between receipt of the final medical report and final claim evaluation constitutes unreasonable delay. *See Sekera*, 2017 WL 6550425, at *12 (finding no unreasonable delay where five months elapsed between insurer's initial claim evaluation and offer to insured).[5]

---

[5] Further, Morales never returned the medical records release authorization as required. (SUF 5; Long Decl. Ex. 1 ("Policy") 33, ECF No. 22-7 ("[Allstate] must be given authorization to obtain medical reports and copies of records.").) This failure interfered with Allstate's investigation and negated Morales's entitlement to any damages in the first place. *See* Cal. Ins. Code § 11580.2(o) (requiring an insured to provide medical and wage authorizations forms upon request); *Myers*, 109 F. Supp. 3d at 1337 (finding plaintiff's "failure to provide the requested medical authorization negated her entitlement to the *arbitration*, let alone to any benefits due to her following the arbitration award"); *Kerrigan*, 543 F. Supp. 3d at 855 n.8 (same).

Even if Allstate should have completed its evaluation of Morales's UIM claim more efficiently, at most Allstate's delay may amount to negligence. "[U]nder California law, negligence is not bad faith." *Guebara*, 237 F.3d at 995. No jury could look at the undisputed facts and evidence and reasonably conclude Allstate engaged in a bad faith pattern of delay.

### 3. *Expert Bias*

Finally, Morales argues Dr. Djalilian was biased, and therefore Allstate was unreasonable to rely on his opinions. She contends that his bias may be inferred from his proceeding with the MRR and IME when he knew he did not have Dr. Goufman's records. (Opp'n 20.) As discussed above, Allstate retained Dr. Djalilian to opine on Morales's medical condition, not Dr. Goufman's diagnosis. Although Dr. Djalilian testified that he would have found Dr. Goufman's records "relevant" to his reports, he also testified that he reviewed those records and they did not alter his opinions regarding Morales's condition. (Djalilian Decl. ¶¶ 8–9.) These undisputed facts do not raise a reasonable inference of bias.

Morales also argues that Dr. Djalilian's bias may be inferred based on the opinion of her retained ENT expert, Dr. Marc Kayem. (Opp'n 20.) Dr. Kayem opines on the ultimate issue here—whether Dr. Djalilian was unreasonable or biased—which is not permitted. *See Chateau Chamberay*, 90 Cal. App. 4th at 350 ("[U]ltimate question[s] . . . [are] to be decided by the court, not a jury."). More significantly, though, Dr. Kayem took pains during his deposition to clarify that he was *not* saying Dr. Djalilian or his reports were biased. (*See* Kayem Dep. 18:6–8 ("I'm not saying that.").) Rather, he opined that Dr. Djalilian genuinely believed his findings, but Dr. Djalilian's opinions were "blunt," "derogatory," and left no room for "statistical anomal[ies]." (*Id.* at 18:8–10, 24:15–25:20.) As such, even considering Dr. Kayem's testimony, Morales does not raise a triable inference of Dr. Djalilian's bias.

Morales fails to show that the adequacy of Allstate's investigation, the timeliness of its claim evaluation, or Dr. Djalilian's bias raise a triable issue as to Allstate's bad faith.

**C.     Summary**

Allstate reasonably withheld the insurance benefit because it was investigating the UIM claim in light of genuine disputes as to the amount of coverage. Morales does not raise a triable issue of material fact to suggest that Allstate's investigation was less than thorough and fair. Thus, the Court finds that no reasonable juror could find that Allstate acted in bad faith, and summary judgment is appropriate on Morales's claim for breach of the covenant of good faith and fair dealing. Correspondingly, summary judgment is likewise appropriate on the request for punitive damages on that claim.

## VI.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Allstate's Motion for Summary Judgment. (ECF No. 22). Allstate's Motions in Limine are therefore **DENIED** as moot. (ECF Nos. 32–36.) All dates and deadlines in this matter are **VACATED**. The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

August 25, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**